Robert DALL and John
Staples, Plaintiffs,

v.

Donald GOULET, et al., Defendants.

Civ. No. 94–245–P–C.

United States District Court,
D. Maine.

Dec. 21, 1994.

Richard W. Elliott II, Boothbay Harbor, ME, for plaintiff.

H. Peter Del Bianco Jr., Black Lambert, Coffin & Rudman, Portland, ME, for defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiffs filed this action seeking damages for injuries allegedly resulting from their arrest on June 18, 1988, and subsequent prosecution by Defendants, all of whom were Brunswick police officers. The four-count Complaint was originally filed in Maine Superior Court in Cumberland County and was timely removed to this Court by Defendants (Docket Nos. 1–1, 1–2). Plaintiffs seek relief for claims under 42 United States Code section 1983 for malicious prosecution (Counts I, II, and III) and conspiracy to deny their due process rights (Count IV). Now before this Court is Defendants' Motion for Summary Judgment on all counts of the Complaint (Docket No. 9).

The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*,

846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return · a verdict for that party. If the evidence is merely colorable, or significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989). Accordingly, this Court will view the facts presented on this motion in a light most favorable to the nonmoving parties here, Plaintiffs Dall and Staples.

## I. MATERIAL FACTS NOT IN DISPUTE

On June 18, 1988, Plaintiffs Staples and Dall were arrested by Defendant Goulet and other members of the Brunswick Police Department. As a result of Plaintiffs' actions during the arrests, Dall was charged with assault and obstructing government administration, and Staples was charged with assault. Both Plaintiffs were subsequently acquitted during a jury trial in Maine Superior Court in January 1989. Immediately after their acquittal, Plaintiffs filed a complaint in Maine Superior Court, against essentially the same Defendants as here,[1] for damages arising out of the events of June 18, 1988, and the subsequent criminal prosecution. On February 7, March 2, and May 9, 1989, Plaintiffs filed amended complaints adding new defendants and counts to the Complaint. By

---

1. Two of the original defendants in that action have died since the initiation of those proceedings and their estates were not named in this action. In addition, the former Brunswick Police Chief, Donald Girardin, although not a defendant here, was named in the former litigation.

the third amendment in May, the Complaint consisted of seven substantive counts: Count I, brought under section 1983 alleging a deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights through, *inter alia,* Defendant police officers' alleged use of excessive force in the course of the arrests on June 18, 1988; Count II, a state tort claim for assault arising out of the same arrest; Count III, a state tort claim for intentional infliction of emotional distress arising out of the same arrest; Count IV, a state tort claim by Defendant Dall for false imprisonment on June 18, 1988; Count V, a claim under 42 United States Code section 1985 alleging a conspiracy by Defendants to deprive Plaintiffs of their constitutional rights arising out of the arrest and subsequent prosecution;[2] Count VI, a claim under 42 United States Code section 1986 also alleging a conspiracy to deny Plaintiffs of their constitutional rights; and Count VII, a state tort claim for malicious prosecution. Affidavit of H. Peter Del Bianco, Exhibit D (Docket No. 11).

Defendants successfully sought summary judgment on the state-law claims on the basis of immunity under the Maine Tort Claims Act. The Superior Court also granted summary judgment on the counts brought under sections 1985 and 1986.[3] While that motion

for summary judgment was pending, Plaintiffs attempted to amend their pleadings a fourth time, seeking relief on the same legal theories as are presented here (*i.e.,* malicious prosecution under section 1983).[4] The Superior Court denied leave to amend the complaint on the basis that the motion was untimely, and Plaintiffs did not appeal that denial. The only remaining counts at trial, therefore, were those alleging the use of excessive force and the existence of a conspiracy to use excessive force in violation of section 1983. In May 1991, after a five-day trial, a jury returned a verdict for Defendants on these counts. Plaintiffs unsuccessfully moved for a new trial and then appealed the Superior Court's denial of the new trial motion, along with the ruling granting summary judgment on the malicious prosecution claim. Subsequently, the Maine Supreme Judicial Court, sitting as the Law Court, affirmed the Superior Court. *Dall v. Caron,* 628 A.2d 117 (Me.1993).

## II. ANALYSIS

■ Defendants seek summary judgment on the basis of the doctrine of *res judicata,* alleging that the proceedings of the state court action disposed, in one way or another, of the claims herein. In order to determine

---

**2.** That count alleged, in part:
> This fifth cause of action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, Section 1985.

Aff. of H. Peter Del Bianco, Exhibit D (Docket No. 11). The count alleged that Defendants conspired to impede, hinder, obstruct, or defeat the due course of justice with the intent to deny Plaintiffs of the equal protection of the laws by engaging in certain "overt acts," including, "On or about June 18, 1988, defendants, *without probable cause, recommended [sic] criminal prosecution of the plaintiffs* on the charges of assault and obstructing government administration," and *"pursued the prosecution of the plaintiffs." Id.* (emphasis supplied).

**3.** The record does not reveal the precise basis of that entry of judgment, but Defendants' Memorandum in support of their Motion argued that there was no evidence in the record of any conspiracy and that Plaintiffs could not show that Defendants engaged in a conspiracy because of Plaintiffs membership in some protected class. Aff. of H. Peter Del Bianco, Exhibit G at 14.

**4.** The Fourth Amended Complaint is nearly identical to the Third Amended Complaint except that in Counts V and VI, Plaintiffs sought relief under section 1983 rather than under sections 1985 and 1986. The allegations in both Complaints are, word for word, almost the same. The section 1983 claim alleged that Defendants conspired
> for the purpose of impeding, hindering, obstructing, or defeating the due course of justice in the State of Maine, and with intent to deny the plaintiffs the equal protection of the laws and to injure the plaintiffs for lawfully attempting to obtain their rights under the Constitution and laws of the United States to the equal protection of the laws [sic].

In furtherance of said conspiracy, the defendants, and each of them, engaged in the following, among other, overt acts: ... on or about June 18, 1988, defendants, *without probable cause, recommended and/or initiated criminal prosecution of plaintiffs;* on or about January 18 and 19, 1989, defendants *criminally prosecuted plaintiffs* on charges of assault and obstructing government administration; ...

Aff. of H. Peter Del Bianco, Exhibit H.

the preclusive effect of a state court judgment, a federal court must look to the law of that state. *Roy v. Augusta,* 712 F.2d 1517, 1520 (1st Cir.1983). Under Maine law, prior to applying the doctrine of *res judicata,* "the court must satisfy itself that 1) the same parties, or their privies are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action." *Kradoska v. Kipp,* 397 A.2d 562, 565 (Me.1979). The first two conditions are clearly satisfied in this case. The parties plaintiff are identical and the parties defendant here were defendants in the prior action. There were, in fact, several final judgments entered on various aspects of the prior litigation.

■ Plaintiffs contend that the "matters presented for litigation" were different in the state action. This Court disagrees. This is not a case like *Beegan v. Schmidt,* 451 A.2d 642 (Me.1982), in which the Law Court had to determine whether to apply claim preclusion to an issue that *had not* been raised in the previous litigation but which should have been raised. Here, in contrast, Plaintiff *had* previously sought a malicious prosecution claim under federal law in general and under section 1983 in particular.

A claim for malicious prosecution under federal law was set out in Count V of Plaintiffs' Third Amended Complaint in the state court action. Plaintiffs sought relief under 42 United States Code section 1985 for an alleged conspiracy, including prosecuting a claim without probable cause, by Defendants in violation of Plaintiffs' constitutional rights. *See supra* note 2. Those allegations state essential elements of a malicious prosecution claim. The section 1985 claim was disposed of on Defendants' summary judgment motion. That ruling was not appealed and, therefore, the Superior Court judgment became final.[5]

■ Moreover, in the Fourth Amended Complaint, which the Plaintiffs unsuccessfully sought leave to file, Plaintiff *specifically* sought relief for malicious prosecution under section 1983. The Superior Court's refusal to grant leave to amend has a preclusive effect on Plaintiffs' attempt to raise the identical claims in subsequent litigation. This Court is persuaded that such a denial should have *res judicata* effect here under Maine law. The Maine Superior Court had granted Plaintiffs three earlier opportunities to amend their pleadings, and the Fourth Amended Complaint was not filed until eighteen months after the initiation of the case, at the close of discovery, and after the filing and briefing by Defendants of their Motion for Summary Judgment. *See* Order of the Superior Court, Aff. of H. Peter Del Bianco, Exhibit I. The United States Court of Appeals for the First Circuit, in construing the federal law of claim preclusion, which applies the same standards as Maine law, has held that *res judicata* operates to preclude future litigation of a claim that was not timely amended to an earlier complaint. *Johnson v. SCA Disposal Services, Inc.,* 931 F.2d 970, 975 (1st Cir.1991).[6]

---

5. *Res judicata* applies to civil rights actions. *Roy v. Augusta,* 712 F.2d 1517, 1520 (1st Cir.1983) (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). Furthermore, the provisions of the Civil Rights Act of 1871, of which both sections 1983 and 1985 are a part,

    did not provide for any substantive rights—equal or otherwise. As introduced and enacted, it served only to ensure that an individual had a cause of action for violations of the Constitution, which in the Fourteenth Amendment embodied and extended to all individuals as against state action the substantive protections afforded by § 1 of the 1866 Act [which subsequently became the Fourteenth Amendment].

*Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1915–16,

60 L.Ed.2d 508 (1979); *see also, Great American Fed. Sav. and Loan. Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Thus sections 1983 and 1985 are components of a remedial scheme for the same core of rights—those provided by the Fourteenth Amendment. Therefore, a final judgment on the merits of section 1985 should preclude a claim based on the same operative facts later brought under section 1983.

6. *See, also, King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992) ("It is well settled that denial of leave to amend [pleadings] constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."); *Qualicare–Walsh, Inc. v. Ward,* 947 F.2d 823, 826 (6th Cir.1991) (holding that state court chancellor's denial of leave to amend, and

Even aside from these judgments, *each* of which operates to preclude the claims herein, it is clear that Plaintiffs' action is precluded because it seeks relief on the same claims as were asserted in their state action. Maine law applies the "transactional" analysis of a claim: "The measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Kradoska,* 397 A.2d at 568. Plaintiffs argue that the only "facts" considered in the state action were whether Defendants used and/or conspired to use excessive force during Plaintiffs' arrests. In a *res judicata* analysis, unlike that for a collateral estoppel, this Court is not restricted to reviewing only the issues "actually litigated," but may consider all matters that were "considered or should have been considered." *Beegan,* 451 A.2d at 644. The claims presented in the Plaintiffs' state court case sought remedies not only for the alleged use of excessive force, but also for the alleged malicious institution of criminal proceeding— the central elements of their claims here. *See supra* note 2. Therefore, the same "aggregate of connected operative facts" were presented in both cases.

Similarly, bringing a second claim based upon the same series of occurrences but under a new legal theory does not escape the effect of claim preclusion. *Beegan,* 451 A.2d at 647; *Kradoska,* 397 A.2d at 569 ("[A] plaintiff seeking legal relief must plead all theories of recovery then available to him."). In fact, this case presents an even stronger argument for the application of *res judicata*

than did *Kradoska. Kradoska* not only relied upon a new legal theory but also sought different relief and would have involved the introduction of different evidence. Here, by contrast, the legal theories are nearly identical and Plaintiffs seek precisely the same relief.

This Court is entirely unconvinced by Plaintiffs' argument that claim preclusion should not apply here since the law regarding section 1983 claims for malicious prosecution was uncertain at the time of the state court action. First, the fact that Plaintiffs unsuccessfully attempted to amend their state court complaint with these claims entirely undercuts this argument. Furthermore, the state of the law under section 1983 was far from vague in 1989. In 1980, the United States Court of Appeals for the First Circuit had left open the issue of whether claims under section 1983 for malicious prosecution could proceed in *Landrigan v. Warwick,* 628 F.2d 736 (1st Cir.1980). Moreover, any uncertainty on the matter was eliminated in early January 1990, when the court decided *Torres v. Superintendent of Police,* 893 F.2d 404 (1st Cir.1990), which set out the specific requirements for a section 1983 claim based upon malicious prosecution. *Id.* at 409 ("[T]he complaint must assert that the malicious conduct was so egregious that it violated substantive or procedural due process rights."). That decision was issued more than six months prior to the filing of Defendants' Motion for Summary Judgment and Plaintiffs' motion for leave to amend.[7]

the failure of plaintiffs to appeal the denial, resulted in a "final judgment" on the issue and precluded relitigation of the matter in federal court); *Nilsen v. Moss Point,* 701 F.2d 556 (5th Cir.1983) (en banc) (providing an extensive discussion of the *res judicata* effect of failure to timely amend pleadings in prior litigation); *Restatement (Second) Judgments,* § 25, comment b; 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 4439 at 358.

7. This Court also rejects Plaintiffs' attempt to distinguish the Fourth Amended Complaint from the case here by stating that the earlier claim was based upon a violation of Plaintiffs' *substantive* due process rights and that the present case is based upon a violation of Plaintiffs' *procedural* due process rights. There is nothing on the face

of either pleadings to suggest that such a distinction was made. Even if there was a distinction, the alteration of legal theories would not avoid the application of *res judicata.*

This Court fails to see how Plaintiffs may claim that the state of federal law in 1990 rendered the cause of action under section 1983 too "tenuous" to seek appeal on the denial, while the claim was apparently not too tenuous to add to their pleadings. It is precisely this type of decision-making and claim-splitting that the doctrine of *res judicata* seeks to avoid. Moreover, Plaintiffs appear to concede that the prior jury verdict on excessive force did involve the same "aggregate of connected operative facts" as the malicious prosecution claims since the loss at trial was apparently a consideration in the decision not to appeal the denial of the motion to amend. Plaintiffs' Memorandum (Docket No. 5) at 3.

Similarly, this Court rejects Plaintiffs' claim that they could not bring the malicious prosecution claim under section 1983 in the prior litigation since it was not until the final decision of the Law Court that they knew that the qualified immunity provisions under Maine law precluded any remedy under Maine tort law.[8] This issue was settled in *Roy* where the First Circuit held:

'state courts, too, are guardians of the federal constitution.' Where a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action.

*Roy*, 712 F.2d at 1521 (quoting *Lovely v. Laliberte*, 498 F.2d 1261 (1st Cir.) *cert. denied*, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974)).

The Law Court has held that *res judicata*, "applie[s] chiefly in the interests of judicial economy to bar relitigation of a cause of action that has already been resolved by a valid prior judgment; the scope of the bar extends to all issues 'tried or that might have been tried.'" *Kradoska*, 397 A.2d at 565 (quoting *Bray v. Spenser*, 146 Me. 416, 82 A.2d 794, 795 (1951)). In addition, the doctrine seeks to promote "[j]udicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings." *Kradoska*, 397 A.2d at 567. In sum, this case presents an excellent example of precisely what the doctrine of *res judicata* seeks to avoid.

### III. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is *GRANTED* with respect to Counts I, II, III, and IV. This Court retains under advisement for future decision Defendants' Motion for Sanctions (Docket No. 13).

So *ORDERED*.

---

8. The Maine Tort Claims Act standard for qualified immunity differs from that applied to section 1983 claims. 14 M.R.S.A. § 8111. *See McLain v. Milligan*, 847 F.Supp. 970, 974 (D.Me.1994) ("The relevant inquiry for assessing whether Defendant is entitled to qualified immunity [in a section 1983 claim] is 'whether a reasonable officer could have believed' that Defendant's actions were lawful 'in light of clearly established law and the information' that Defendant possessed." (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)). In contrast, qualified immunity is provided under the Maine Tort Claims Act for "the perform[ance] or fail[ure] to exercise or] perform a discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1)(C). The "decision to bring criminal charges is a discretionary function under the Maine Tort Claims Act." *McLain*, 847 F.Supp. at 977 (citing *Dall v. Caron*, 628 A.2d 117, 119 (Me.1993)).