REYNA, Circuit Judge,
dissenting.
The issue before us is whether the district court decided the ownership of the Winnie-the-Pooh trademarks. Because I believe the district court did not decide ownership of the Pooh trademarks, and because I believe that a decision on ownership was not necessary to the district court’s decision concerning trademark infringement, I respectfully dissent.
I. Collateral Estoppel
Collateral estoppel, often called “issue preclusion,” bars relitigation in a second action of an issue litigated and decided in a prior action. Because preclusion may forever bar meritorious claims and negate significant legal rights, courts must ensure that the circumstances for preclusion are “certain to every intent.” Mayer/Berkshire Corp. v. Berkshire Fashions, Inc., 424 F.3d 1229, 1234 (Fed.Cir.2005) (citing Russell v. Place, 94 U.S. 606, 610, 24 L.Ed. 214 (1876)). Precedent weighs against denying litigants a day in court unless there is a clear and persuasive basis for that denial. If there exists a reasonable doubt as to whether an issue was actually decided in the first action, preclusion should not apply in the subsequent action. Kearns v. Gen. Motors Corp., 94 F.3d 1553, 1557 (Fed.Cir.1996); McNellis v. First Fed. Sav. & Loan Ass’n of Rochester, New York, 364 F.2d 251, 257 (2d Cir.1966) (“[A] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue.” (internal citation omitted)). Guided by these principles, we resolve ambiguities in what issues were actually decided in a prior proceeding in favor of the party seeking to prevent application of preclusion. Charter Fed. Sav. Bank v. United States, 87 Fed.Appx. 175, 178 (Fed.Cir.2004) (nonprecedential).
The Supreme Court summarized the requirements of issue preclusion in Montana v. United States, 440 U.S. 147, 153-55, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Issue preclusion requires (1) identity of an issue in a prior proceeding, (2) that the identical issue was actually litigated and decided, (3) that determination of the issue was necessary to the judgment in the prior proceeding, and (4) that the party defending against preclusion had a full and fair opportunity to litigate the issue in the prior proceeding. Montana, 440 U.S. at 153-55, 99 S.Ct. 970. The burden is on the party seeking preclusion to show “that the same issue was ‘actually and necessarily determined’ in the prior proceeding.” Connors v. Tanoma Min. Co., Inc., 953 F.2d 682, 684-85 (D.C.Cir.1992).
We owe no deference to a determination by the Trademark Trial and Appeal Board (“TTAB”) on preclusion. In re Trans Texas Holdings Corp., 498 F.3d 1290, 1296 (Fed.Cir.2007). As it has been observed by other courts, the correctness of the *647 earlier decision is not an issue, and it is irrelevant to the application of the estoppel. Westwood Chem., Inc. v. U.S., 525 F.2d 1367, 1375 (Ct.Cl.1975). It is therefore inappropriate to consider whether the earlier decision was correct; the law “does not authorize unbridled excursions into the record of the earlier trial before applying the estoppel of the previous judgment.” See Gammino v. Sprint Commnc’ns. Co. L.P., No. 10-2493, 2011 WL 3240830 (E.D.Pa. July 29, 2011).
In view of the foregoing, I believe the TTAB erred on two distinct grounds when it determined that the trademark ownership issue was precluded. First, the district court did not actually decide the ownership issue. Second, resolution of the ownership issue was not essential or necessary for the district court’s decision on noninfringement.
A. A Reasonable Doubt
The basic question before the district court was whether Disney had infringed the Pooh trademarks. Disney asserted as a defense to infringement that it had a legal right to use the Pooh trademarks based on a transfer of the marks from Slesinger to Disney. The court was asked to resolve whether the transfer effected a license (for use), or an assignment (sale) of the trademarks. The parties briefed the license-assignment issue, so there is no question as to whether the license-assignment issue was litigated. But there exists reasonable doubt whether the district court actually decided the issue. The court does not explicitly state in clear, plain language whether the grant of rights, i.e., the transfer, was a license or an assignment. In relevant part, the district court’s opinion states,
Disney puts forth two main contentions in its Motion: First, that Slesinger granted to Disney all of the rights it had in the Pooh characters, and retained no rights which Disney could infringe, and second, that Slesinger’s counterclaims are inconsistent with its earlier position in the Superior Court action that Disney’s uses of the Pooh characters were authorized and royalty-producing. The Court agrees with both propositions.
Milne ex rel. Coyne v. Slesinger, 2:02CV08508-FMCPLAX, 2009 WL 3140439 at *1 (C.D.Cal. Sept. 25, 2009) (emphases added). The district court’s use of the phrase “granted to Disney all of the rights” could indicate an assignment, but it could also indicate a license to use, i.e., to promote, advertise and otherwise exploit the commercial value of the trademarks. See, e.g., In re Polar Music Int’l AB, 714 F.2d 1567, 1569 (Fed.Cir.1983) (“Subject to certain terms and conditions, Atlantic is granted the right to use the mark ‘ABBA’ and likenesses of the group in connection with the promotion, advertising, distribution, exploitation, and sale of records embodying the master recordings made by appellant.” (emphases added)). Similarly, the district court’s conclusion that Slesinger “retained no rights which Disney could infringe” is equally consistent with either a license or an assignment. The court’s recognition that “Disney’s uses of the Pooh characters were authorized and royalty-producing” can reasonably refer to an assignment, but the words chosen by the court are more consistent with a license given the implied extension of authority and the obligation for continued royalty payments for use of the Pooh trademarks.
Indeed, the district court’s opinion appears to suggest that Slesinger retained some rights to the Pooh trademarks, but that any rights retained were insufficient to support an infringement action. Milne, 2009 WL 3140439 at *4 (“Slesinger transferred all of its rights in the Pooh works to *648 Disney, and may not now claim infringement of any retained rights.”). This scenario is as suggestive of a license as it is of an assignment. See Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1076 (5th Cir.1997) (“A license to use a mark is a transfer of limited rights, less than the whole interest which might have been transferred.” (emphases added; internal quotation marks omitted)); Consol. Foods Corp. v. United States, 569 F.2d 436, 437 (7th Cir.1978) (“This issue of whether a transfer of the use of a trademark is a sale or a license for tax purposes is a thorny one____” (emphasis added)). It follows that a finding that some or all rights were transferred is not itself determinative of ownership.
The district court’s failure to definitively and expressly state whether the transfer was a license or assignment is striking and illuminating. The district court’s resort to ambiguity on the issue is significant given that the parties fully briefed the issue. One explanation could be that the district court found it unnecessary to actually decide the issue as long as it focused on whether Disney had a legal right to use the Pooh trademarks. In any event, there exits reasonable doubt whether the court actually decided that the transfer was accomplished via an assignment, i.e., by outright sale. On that basis alone, collateral estoppel should not apply.
B. Ownership Not Essential
For operation of preclusion, an issue must also be necessary to the judgment in the previous action. Mother’s Rest., Inc. v. Mama’s Pizza, Inc., 723 F.2d 1566, 1571 (Fed.Cir.1983) (“In order to give preclusive effect to a particular finding in a prior case, that finding must have been necessary to the judgment rendered in the previous action.”). The relevant question here is whether the district court was necessarily required to decide whether the transfer of the Pooh trademarks was an assignment in order for the court to resolve the issue of trademark infringement. See id. The answer is no.
Disney argues that in order for the district court to evaluate whether Disney’s use of the Pooh trademarks was infringing, the court first had to determine whether Slesinger or Disney owned the rights. This is incorrect. As happened precisely in this case, an effective defense to a claim of trademark infringement can be made upon a showing of authorized use under a license. De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 242, 47 S.Ct. 366, 71 L.Ed. 625 (1927) (“If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license.”); see also 3 McCarthy on Trademarks and Unfair Competition § 18:40 (4th ed. 2011) (“Every license carries with it a waiver of the right of the trademark owner to sue for infringement arising out of acts that fall within the scope of the license.”). Whether Disney was authorized to use the Pooh trademarks does not solely depend on whether Slesinger or Disney owned the marks, because Disney could have been authorized to use the Pooh trademarks under a license.
The majority acknowledges that the district court never directly addresses the license-assignment issue, and the majority cites authorities discussing application of preclusion where no explicit findings were made in the prior action. Those authorities, however, require that the precluded issue be “the only rational one the fact finder could have found,” Clark, 966 F.2d at 1321; that the issue was “necessarily implicit in a larger determination,” Moore’s Federal Practice — Civil § 132.03[3][e]; and that the issue was “necessarily resolved,” id. That is not the *649 case here. Here, ownership of the Pooh trademarks was not the only rational basis on which a fact finder could find non-infringement. An equally rational basis is that Disney was an authorized user under a license. It follows that collateral estoppel cannot apply.
Because the court could have disposed of Slesinger’s infringement claims solely on the basis that Disney was authorized to use the Pooh trademarks, it is clear that a decision on ownership of the rights was not essential to the court’s judgment on infringement. This alone is sufficient to preclude the application of collateral estoppel.
Based on the foregoing, I believe the TTAB erred in precluding Slesinger from disputing the ownership of the Pooh trademarks. I therefore respectfully dissent.